UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SHANE MATHERNE ENTERPRISES, INC., ET AL.**         **CIVIL ACTION**

**VERSUS**                                                                              **No. 04-2140**

**CLIFFORD SOKOLIC**                                                        **SECTION "K"(2)**

### ORDER

Before the Court is defendant's Motion to Dismiss under Rule 12(b) for Lack of Personal Jurisdiction and Improper Venue (Rec. Doc. No. 16). Having reviewed the pleadings, memoranda, and relevant law, as well as having held oral argument, the Court **DENIES** defendant's Motion to Dismiss.

**Background**

Sometime in August of 2002 defendant Clifford Sokolic began marketing and selling a product called "Toledo Swords" via the internet. To fill orders Sokolic relied on a drop ship[1] arrangement with Toledo Swords USA, LLC, a distributor located in Texas. On November 15, 2002

---

[1] A drop shipping arrangement is where a merchant accepts orders for products from customers and then pays a manufacturer or distributor to ship the product directly to the customer.

1

Toledo Swords USA, LLC was purchased by plaintiff Shane Matherne Enterprises, Inc. ("SME"), d/b/a Toledo Swords USA and Toledo Swords, Inc. for $35,000, and it was relocated to Louisiana. The assets allegedly purchased by SME included a distributorship agreement with Toledo Swords Spain that gave SME exclusive rights to sell products manufactured by Toledo Swords Spain in North America. It also transferred three domain names, including "www.toledoswords.com." Not incidentally, Toledo, Spain is known by sword enthusiasts worldwide as the "birthplace" of the art of swordmaking; thus ownership of the domain name www.toledoswords.com is potentially of significant value. SME and its offshoots were Louisiana corporations domiciled in St. Charles Parish, Louisiana. After the sale Sokolic continued to fill orders as a drop ship dealer for SME. According to plaintiff SME, this arrangement included placing orders with SME, which SME would then process, fill, and ship, in the process paying Sokolic a commission for each order.

Sometime in July, 2003 the parties (SME, represented by Shane Matherne personally, and Sokolic) apparently entered into a new business arrangement, formed for the purpose of selling products worldwide on the internet. Allegedly Matherne and Sokolic were to be equal "partners" in any entity, and the parties agreed over the telephone that Sokolic would be responsible for maintaining a website and handling marketing, all from his residence in St. Thomas in the United States Virgin Islands. On August 21, 2003, plaintiff formed Toledo Swords, Inc., another Louisiana corporation wherein SME was sole shareholder and plaintiff Matherne was President, director, and Registered Agent. On December 22, 2003 plaintiff Matherne allegedly executed a document giving Sokolic a business arrangement with Toledo Swords, Inc.. Supposedly the arrangement, made retroactive to July 1, 2003, was referred to as a partnership. According to Sokolic the marketing of

the business was directed worldwide and in no way targeted specifically to Louisiana.  Sokolic contends that his only contact with Louisiana consisted of limited correspondence, by telephone, fax, and email, with SME and its associates who happened to be located in Louisiana.

Contrastingly, plaintiff Matherne argues that from July 1, 2003 to the time of the partnership's eventual demise, Sokolic received mail, samples of products from vendors, and other deliveries at the Louisiana offices of Toledo Swords, Inc.  Sokolic also had merchandise delivered and warehoused there and received phone calls, invoices, and faxes in the Louisiana offices.

Eventually a business dispute developed between SME and Sokolic, stemming from Sokolic's use of the domain name www.toledoswords.com.  Plaintiffs allege Sokolic, sometime before December 22, 2003 and unbeknownst to plaintiffs, fraudulently transferred ownership of the domain name from Matherne to himself.  When confronted by Matherne, according to plaintiffs, Sokolic allegedly demanded Matherne buy the domain name back from him for $250,000.  Plaintiff refused and subsequently filed suit in the Eastern District of Louisiana on July 30, 2004 seeking an injunction preventing Sokolic's use of the domain name, and alleging, *inter alia,* damages for violation of LSA R.S. 51:1401 *et seq* (the Louisiana Unfair Trade Practices Act), conversion, fraudulent transfer pursuant to La Rev. Stat. 9:2790.1 (the Louisiana Uniform Fraudulent Transfer Act), trespass to chattels.  All of these claims essentially stem from Sokolic's alleged misappropriation of www.toledoswords.com.  Sokolic apparently continued to own and use the domain name from his residence in St. Thomas, U.S.V.I.,[2] and he now moves for dismissal of

---

[2]St. Thomas may now be defendant's former residence as at oral argument, counsel for defendant implied that defendant's current residence is now in the state of Pennsylvania. However, at the time of the events germane to this lawsuit, defendant was residing in St.

plaintiffs' claims under Rule 12(b), claiming a lack of personal jurisdiction and improper venue.

Specifically, Sokolic alleges he has done nothing to *purposefully* avail himself of the benefits and protections of Louisiana law; thus essentially, this Court cannot assert personal jurisdiction over him. For instance, Sokolic states he entered into an oral contract with Matherne after Matherne contacted *him* unilaterally, at Sokolic's home in St. Thomas. Sokolic never entered the state of Louisiana during the negotiation or performance of the contract and at all pertinent times he remained at his home in St. Thomas. Sokolic maintained no mailing address, telephone number, residence, office, employee or agent in Louisiana, and his only contact with Louisiana consisted of email, fax, and telephone correspondence with plaintiffs and their associates who were "fortuitously" located in Louisiana. As such Sokolic had insufficient contacts with the state of Louisiana to justify being haled into court here. Given these facts, Sokolic lacks sufficient minimum contacts with Louisiana to confer personal jurisdiction over him.

Additionally, Sokolic argues that dismissal is appropriate because Louisiana is an improper venue. 28 U.S.C. § 1391 provides that diversity cases may only be brought in (1) a federal district where any defendant resides if all defendants reside in the same state or (2) in a federal district where a "substantial part" of the events or omissions giving rise to the claim occurred, or where a substantial part of the property that is subject to the action is located. 28 U.S.C. § 1391 (1998). Venue in this case is proper in the U.S. District Court for the District of the Virgin Islands, not the Eastern District of Louisiana, because Sokolic, as sole defendant, resided in the U.S.V.I. at all times during the events involved. Furthermore, Sokolic argues that a "substantial part" of the events

---

Thomas, U.S.V.I.

giving rise to plaintiffs' claims occurred at his residence in St. Thomas, not in Louisiana. All of the actions allegedly causing harm to plaintiffs occurred in the U.S.V.I.'s; thus venue in Louisiana is improper.

Conversely plaintiffs argue that this Court has specific jurisdiction over Sokolic because Sokolic performed affirmative acts by conducting business activities in Louisiana and thereby purposefully invoking the benefits and protections of Louisiana's laws. It was Sokolic, who solicited plaintiff Shane Matherne to expand their business relationship by becoming a partner in the Louisiana business of Toledo Swords, Inc. Additionally, the sole source of merchandise for Toledo Swords, Inc. came through SME, a Louisiana company. All sales, including those made over the internet, were made through Louisiana such that Sokolic was doing business in Louisiana for a Louisiana-based distributor. Plaintiffs state that when Sokolic accepted partnership with a Louisiana corporation he *purposefully availed* himself of the privilege of conducting activities in Louisiana. Further, Sokolic also received faxes, mail, and samples of products from vendors at SME's Louisiana offices, and all of the merchandise sold by Sokolic was delivered to the Louisiana offices for either storage at the warehouse or further delivery to customers. Sokolic thus deliberately engaged in significant activities within Louisiana. Simply put, plaintiffs allege that Sokolic entered into a Louisiana business arrangement, used Louisiana offices for mail and messages, had products shipped to Louisiana for further shipping or storage, and used Louisiana residents as agents to facilitate final delivery of products stored in Louisiana. Thus he should be subjected to jurisdiction here.

Furthermore, plaintiffs aver that venue is proper because "a substantial part of the events or

omissions giving rise to the claim" occurred in Louisiana and "a substantial part of the property that is the subject of the action is situated" in Louisiana. 28 U.S.C. § 1391.

**Legal Standard**

A federal district court sitting in diversity may exercise personal jurisdiction only to the extent permitted a state court under applicable state law. *See Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997). The Louisiana long-arm statute extends personal jurisdiction to the maximum limits permitted by due process. *See Pedelahore v. Astropark, Inc.*, 745 F.2d 346, 348 (5th Cir. 1984). Due process advances a two-pronged test in order for a court to exercise jurisdiction: (1) the nonresident must have minimal contacts with the forum state and (2) subjecting the nonresident to jurisdiction must be consistent with traditional notions of fair play. *Id.*, *see also International Shoe Co. V. Washington*, 326 U.S. 310, 316 (1945).

Minimum contacts with the forum state arise incident to either "specific jurisdiction" or "general jurisdiction." Specific jurisdiction is appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action, *see Felch v. Transportes Lar-Mex Sa Da CV*, 92 F.3d 320 (5th Cir. 1996), and exists "when a nonresident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000)(quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). A "single act, by the defendant directed at the forum state, therefore, can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 417 (5th Cir.1993). Thus where there is intentional and allegedly

tortious actions expressly aimed at Louisiana, the tortfeasor must "reasonably anticipate being haled into court there." *Calder v. Jones*, 465 U.S. 783, 790 (1984).  The foreseeable effects of a tort "are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum."  *Allred v. Moore & Peterson*, 117 F.3d 278, 286-87 (5th Cir. 1997)(quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985))(emphasis added).  "Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum."  *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).

To determine the second prong of the due process inquiry, namely whether exercising jurisdiction comports with "fair play and substantial justice," a court must look at the following:

> (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies.

*Gundle Lining Const. Corp. V. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996).

As is the case here, in order for a plaintiff to meet a challenge to *in personam* jurisdiction prior to trial and without a full evidentiary hearing, a plaintiff need make only a prima facie showing of jurisdiction.  This means that the allegations of the plaintiff's complaint are taken as true, except as controverted by the defendant's affidavits, and conflicts in the affidavits are resolved in the plaintiff's favor. *See Panda Brandywine Corp. v. Potomac Electric Power Co.* 253 F.3d 865, 868 (5th Cir. 2001)("We accept the plaintiff's uncontroverted, nonconclusional facts as true and resolve all controverted allegations in the plaintiff's favor"); *see also Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332 (5th Cir. 1982) *cert. denied*, 460 U.S. 1023 (1983); *see also In re: Bank of Louisiana/Kenwin Shops Inc. Contract Litigation*, 1999 WL 518852 *1, *5 (E.D.La. Jul. 19,

1999)(quoting *Asarco. Inc. V. Gleanra. Ltd.*, 912 F.2d 784 (5th Cir. 1990)).

The "prima facie case requirement does not require the court to credit conclusory allegations," *Panda Brandywine Corp.*, 253 F.2d at 870, and "when the plaintiff avoids a preliminary motion to dismiss by making a prima facie showing of jurisdictional facts, he must still prove the jurisdictional facts *at trial* by a preponderance of the evidence." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1285 n. 2 (9th Cir.1977) (emphasis added). In other words, "[e]ventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at a trial." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

**Analysis**

While several disputes of fact between the parties clearly exist in the instant matter, this Court, pursuant to the standard outlined above, must, at this stage of the litigation, resolve all conflicts in the plaintiff's favor.  The Court finds that Mr. Sokolic's contacts with Louisiana are sufficient to confer personal jurisdiction.  A prima facie showing, which is all that is required by plaintiffs at this stage of the proceedings, need only allege facts adequate to prove the underlying conduct supporting the cause of action, and thereby prevail (absent any rebuttal at trial).  Plaintiffs have made such a prima facie showing.  The Court has specific, personal jurisdiction over Sokolic because the alleged wrongful act, namely Sokolic's allegedly fraudulent and unauthorized transfer of the ownership and use of the domain name "www.toledoswords.com" is a *specific act*, the effects

of which were targeted to Louisiana and felt in Louisiana.[3] This act confers specific personal jurisdiction over Sokolic. It is well settled law that a single act by the defendant directed at the forum state can be enough to confer specific personal jurisdiction if that act gives rise to a plaintiff's cause of action. *See Ruston Gas Turbines, Inc.v. Donaldson Company, Inc.*, 9 F.3d, 415 419 (5th Cir. 1993). At this stage the Court must take as true plaintiffs' allegations that it was Sokolic himself who transferred the domain name, and that this specific act by Sokolic gave rise to the myriad causes of actions now asserted.

Furthermore, plaintiffs allege that Sokolic not only misappropriated the domain name in question, but also that by doing so he committed conversion and unjustly enriched himself. Plaintiffs allegations that Sokolic committed a wrongful act by fraudulently transferring ownership of the domain name, and that this act was aimed at a Louisiana corporation (Toledo Swords, Inc.), if taken as true, are enough to confer specific jurisdiction over Sokolic, as it is forseeable that such an action would cause harm in Louisiana. *See Wien Air Alaska*, 195 F.3d at 212. According to plaintiffs' allegations, Sokolic performed a tortious act outside of Louisiana directed towards plaintiffs in Louisiana, an act which had foreseeable effects in the forum state. *Id.*

As to whether exercise of this Court's jurisdiction comports with due process notions of fair play and substantial justice, the Court finds that it does. Exercising personal jurisdiction over Sokolic is consistent with due process. SME, Matherne, and Toledo Swords, Inc., all of whom are

---

[3]Additionally, while not fully explored, at oral argument counsel for defendant Sokolic seemingly represented that the alleged transfer of the domain name occurred in Louisiana itself, that is via a Louisiana computer. Such a fact, if true, would tend to support this Court's exercise of specific jurisdiction.

Louisiana residents, have been injured; thus Louisiana has an immediate interest in the instant matter. The current action, which also seeks a TRO and entrance of a permanent injunction against Sokolic from using www.toledoswords.com, will provide plaintiffs with convenient, effective, and immediate relief if liability is found, and it should dispense with all claims. Furthermore, the substance of the business agreement in question–its nature, ownership of the domain name, and Sokolic's duties to the partnership–all relate to a Louisiana corporation. Sokolic may be burdened by having to leave St. Thomas or perhaps now, Pennsylvania, to defend any action against him; however this fact is not enough to overcome the forum state of Louisiana's overwhelming interest in efficient and complete resolution of these matters. According to plaintiff, and, notably, uncontroverted by Sokolic, Sokolic became a partner in a business entity that, although formed for the purpose of selling products worldwide on the internet, was incorporated in Louisiana. This business arrangement resulted in substantial contacts by Sokolic, including reimbursement for business related expenses,[4] and correspondence via telephone, email, and fax with SME and Toledo Swords, Inc., both Louisiana corporations. Certainly where, as here, there are allegations of fraudulent contact towards those Louisiana entities, the state of Louisiana has a great interest in this matter, at least to the extent of making sure Louisiana corporations are protected and corporate laws are followed.

   Regarding Sokolic's claim of improper venue under Fed. R. Civ. P. 12(b)(3), venue is proper because "a substantial part of the events or omissions giving rise to the claim," occurred in Louisiana, namely the receipt, shipment, and storage of the items purchased via the "toledo swords"

---

[4] See Rec.Doc. No. 30, Sokolic affidavit, ¶11.

domain website. Furthermore, it was stated at oral argument that the computer from which the domain name was transferred was itself located in Louisiana. Consequently, "a substantial part of the property that is the subject of the action," namely the registry of the domain name prior to Sokolic's alleged misappropriation, "is situated" in Louisiana. See 28 U.S.C. § 1391.

Accordingly,

**IT IS ORDERED THAT** defendant's Motion to Dismiss (Rec. Doc. No. 16) is hereby **DENIED**.

New Orleans, Louisiana, this   6th   day of March, 2006.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**