UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHANE MATHERNE ENTERPRISES, INC., ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 04-2140** |
| **CLIFFORD SOKOLIC, ET AL.** | **SECTION: "K"(2)** |

## ORDER AND REASONS

Before the Court is the Motion to Dismiss (Rec.Doc.No. 52) of Plaintiffs Shane Matherne Enterprises d/b/a Toledo Swords USA and Toledo Swords, Inc., and Shane Matherne (collectively "Matherne"),[1] wherein they assert that the counterclaims filed by Defendant Clifford Sokolic ("Sokolic") seeking damages for misappropriation of funds, unjust enrichment, and fraudulent inducement should be dismissed. After reviewing the pleadings, memoranda, and relevant law, the Court hereby denies Plaintiffs' motion for the reasons assigned below.

---

[1] Shane Matherne Enterprises, Inc. is a Louisiana corporation domiciled in St. Charles Parish, Louisiana.

1

**I. BACKGROUND**

Both Plaintiff Matherne and Defendant Sokolic are engaged in the sale of fantasy cutlery. Plaintiff alleges that on November 15, 2002, he purchased Toledo Swords, LLC, from Lisa and Ron Valesco, for $35,000. Plaintiff submits that as part of the purchase, Matherne received three internet domain names, including www.toledoswords.com, which is the subject of this litigation.[2]

Defendant contends that in August 2002 he began marketing and selling a product called "Toledo Swords" on his internet website through a drop-ship arrangement[3] with Toledo Swords USA, LLC, which was a distributor located in Texas. Defendant submits that Toledo Swords USA, LLC was purchased by Matherne in December 2002.

In July 2003, though it is disputed as to who contacted whom, Sokolic and Matherne

---

[2] Plaintiff alleges the following with regard to www.toledoswords.com:

> This particular domain name was the most important part of the purchase because of the potential number of actual and anticipated "hits" or visits to the website. In fact, plaintiff Matherne based his decision to purchase Toledo Swords, LLC, on the number of actual hits on that website. That domain name was important because Toledo, Spain is known by sword collectors worldwide as the "birthplace" of the art of sword making. Swords from Toledo, Spain are considered to be of the highest quality because they come from an area known to produce the highest quality swords hand crafted for generations by families of artisans. [Matherne] was proud to begin this new venture and even included in the website the [Matheren] logo, which was created and registered in the State of Louisiana.

*See* Mot. Dismiss, at p. 2 (Rec.Doc.No. 52).

[3] A drop shipping arrangement entails a mail or Internet merchant taking orders from the customer and having the manufacturer or distributor send the product directly to the customer.

entered into an arrangement whereby Sokolic would assist in marketing, affiliate programs, and web maintenance on behalf of Matherne's Louisiana companies.

On or about August 1, 2003, Plaintiff argues that Sokolic requested that the domain name [www.toledoswords.com](www.toledoswords.com) be registered in Sokolic's name. Plaintiff states that he refused this request because Sokolic already had full access to the domain to perform his duties under the arrangement. Sokolic, on the other hand, suggests that Plaintiff had agreed to transfer the domain name. Sokolic submits that by doing so, it would allow Sokolic to redirect customers to Sokolic's internet business site, realcoolsavings.com/loveleaf.net. This was done, Sokolic argues, because the latter website had much stronger search engine rankings.

Sokolic further contends that Matherne agreed to "change the payment buttons on his website to the merchant account for Matherne's company, and give up any profit on the sales of Toledo Swords products to the new company that was to be formed." *See* Opp. Mot. Dismiss, at p. 3 (Rec.Doc.No. 58). Sokolic maintains that the terms of this arrangement entitled Sokolic a one-third share of the profits from the website's sale of non-Toledo Swords products with no deductions for certain expenses incurred by Matherne. *Id.*

Despite this agreement, Sokolic contends that Matherne's following actions prompted Defendant to file a Counterclaim in this matter:

> Matherne, despite the agreement, never formed a separate corporation or partnership naming all of the parties as partners. Matherne never capitalized toledoswords.com. Matherne belatedly opened a separate checking account for toledoswords.com, but prior to that Matherne used his existing account to receive profits for the new entity and paid his other corporate debts, unrelated to the proposed entity between Sokolic and Matherne, out of profits from the

>Sokolic/Matherne venture. Matherne never split half of the gross profits of toledoswords.com between the partners. And, Matherne failed to ship merchandise ordered by customers. These actions, therefore, resulted in Sokolic's filing of a counter-claim in this matter.

*Id.*

On the other hand, Matherne avers that on December 22, 2003, he granted Defendant Sokolic a partnership interest in Toledo Swords, Inc.,[4] retroactive to July 1, 2003.[5] Plaintiff further suggests that Sokolic used his knowledge of the internet to ultimately transfer ownership of the domain name from Matherne to Sokolic. Upon demand for its return, Plaintiff alleges that Sokolic offered to sell the domain name back for $250,000.

Plaintiff filed its Complaint (Rec.Doc.No. 1) on July 30, 2004, wherein it seeks damages for theft, violation of the Louisiana Unfair Trade Practices Act ("LUPTA"), conversion, violation of the Uniform Fraudulent Transfer Act, Trespass to Chattels, violation of Louisiana Civil Code article 2926 (Bailor/Bailee), and a judicial declaration regarding ownership of the

---

[4] Toledo Swords, Inc. was created on August 21, 2003, with Shane Matherne Enterprises, Inc., as the sole shareholder, and Shane Matherne as the President, Director, and Registered Agent.

[5] This agreement granting business access to Toledo Swords, Inc., reads as follows:

>I, Shane A. Matherne, grant Don Bernard and Clifford Sokolic business access to Toledo Swords, Inc., a Louisiana Corporation as equal partners. A formal Partnership Contract to follow which will identify all aspects of the business agreement.
>
>This grant of authority is retroactive to July 1, 2003, the day said partnership was created.

*See* Mot. Dismiss, Exhibit B (Rec.Doc.No. 52).

domain name.

Defendant filed its Answer and Counterclaim (Rec.Doc.No. 39) on May 3, 2006, wherein it alleges breach of contract, misappropriation of funds, unjust enrichment, fraudulent inducement, violations of the Louisiana Unfair Trade Practices Act, and defamation.[6]

The instant motion seeks dismissal of the allegations involving misappropriation of funds, unjust enrichment, and fraudulent inducement. Specifically, Plaintiff argues that Sokolic failed to plead specific facts to support his claims of misappropriation funds, unjust enrichment, and fraudulent inducement. Defendant Sokolic contends that neither misappropriation of funds nor unjust enrichment need be plead with specificity, and that the alleged facts are sufficient to support a claim of fraudulent inducement.

## **II. LEGAL STANDARD**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir. 1980). A district court may not dismiss a complaint under FRCP 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Blackburn v. Marshall,* 42

---

[6] The defamation claim and the claims under the Louisiana Unfair Trade Practices were dismissed.

F.3d 925, 931 (5th Cir.1995). Articulating this strict standard, the Fifth Circuit stated that "[t]he question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey v. Texas A & M University System,* 117 F.3d 242 (5th Cir.1997)(*citing* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1357, at 601 (1969)).

### III. ANALYSIS

**A.    Pleading of State Law Claims**

For the purposes of pleading state law claims in a federal complaint, Rule 8(a) of the Federal Rules of Civil Procedure requires a plaintiff to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). The purpose is to put a defendant on notice of the claim and to allow for an adequate response. *see* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure,* § 1202 (1991). Generally, the requirements of federal notice pleading are liberally construed. *See Evans v. Department of Housing and Urban Development*, 2004 WL 179193, *7(E.D. La., Jan. 28, 2004) (*citing Gellegos v. Louisiana Code of Criminal Procedure Art. 658*, 858 F.2d 1091, 1092.

However, with respect to allegation of fraud, Federal Rule of Civil Procedure 9(b) mandates that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." To satisfy the pleading requirements of Rule 9(b) a

plaintiff must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Tech., Inc.,* 112 F .3d 175, 177 (5th Cir.1997). To put it another way, Rule 9(b) requires that a plaintiff alleging fraud specify the "who, what, when, where, and how" of the alleged fraud." *U.S. Ex Rel Williams v. Bell Heliocopter Textron,* 417 F.3d 450, 453 (5th Cir.2005) (internal quotation and citation omitted).

That state law causes of action that are the subject of the instant motion to dismiss are misappropriation of funds, or alternatively, unjust enrichment, and fraudulent inducement. Only the fraudulent inducement claim need be pleaded with particularity required by Rule 9(b). The pleading of the remaining causes of action are governed by Rule 8(a).

Defendant pleads that "In or about July of 2003, Shane Matherne and Clifford Sokolic entered into a contractual arrangement whereby the parties agreed to the creation of a new Internet business designed to sell products on the World Wild Web." *See* Countercl., at p. 10 (Rec.Doc.No. 39). Defendant contends that pursuant to the contract, Matherne was required to create a new legal entity, capitalize the business, and distribute the company's profits. *Id.* at p. 11.

Based on these actions, Defendant claims that he is entitled to damages because Matherne breached the July 2003 by misappropriating the company's funds. As an alternative argument, Defendant contends that he must be reimbursed for the "value of the time and effort expended by [him] in connection with the aforesaid contract." *Id.*

It is clear that Defendant's claims are in connection with the July 2003 contract.

Moreover, it is equally apparent that Defendant seeks damages for certain failures of Matherne under the contract or quasi-contract. The Court finds that these facts plead in Defendant's Counterclaim are sufficient to put Plaintiff Matherne on notice as the claim for misappropriation of funds and unjust enrichment.

As for the fraud claim, the Court must analyze the Counterclaim to determine if it sets forth with particularity the who, what, when, where, and how of the fraudulent inducement claim. Defendant charges that Matherne "fraudulently induc[ed] Clifford Sokolic to expend his time, skill, and effort." *Id.*, at p. 14. This time, skill, and effort, was expended pursuant to the putative agreement between the parties in July 2003. *Id.*, at p. 11. Clearly, these allegations specifically set forth the who, when, where, and how of the fraudulent inducement. That is, Defendant avers that Plaintiff Matherne fraudulently induced him in July 2003 to expend his time, skill, and effort by promising to create a company, capitalize the venture, and distribute its profits per the terms of the agreement.

The only element not described with particularity is what exactly Defendant did because of the fraudulent inducement. It is merely alleged that Defendant expended his time, skill, and effort without any further description. The Court finds that this allegation is not sufficiently specific to meet the standard for pleadings required under Rule 9(b).

However, the Court is mindful that motions to dismiss should be rarely granted, and that it should grant leave to amend when the defects in the pleadings are not insurmountable. *In re Mastercard Intern. Inc.*, *Internet Gambling Litigation*, 132 F.Supp.2d 468 (E.D. La. Feb. 23, 2001). *See e.g.*, *See e.g., Hart v. Bayer Corp.,* 199 F.3d 239, 248, note 6 (5th Cir. 2000) (court

should not generally dismiss without leave to amend unless defect is simply incurable); *Knevelbaard Dairies v. Kraft Foods, Inc.,* 232 F.3d 979, 983 (9th Cir.2000) (leave to amend must be granted unless amendment would be futile); *Confederate Memorial Association v. Hines,* 995 F.2d 295, 299 (D.C.Cir.1993) (district court acted properly when it failed to grant leave to amend granting motion to dismiss when dismissed party does not indicate particular grounds and dismissed party previously brought same suit in another court); Wright & Miller, *Federal Practice & Procedure,* § 1483, p. 588.

The Court finds that the defects in Defendant's Counterclaim with respect to the fraudulent inducement allegation are easily curable. Defendant need only set forth the specific facts as to time, effort, and skill he expended because of the fraudulent inducement. The Court also notes that Plaintiff will not be prejudiced as trial is over three months away and depositions of the parties have not taken place. Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion to Dismiss (Rec.Doc.No. 52) is hereby **DENIED**; however, Defendant must amend its Counterclaim by June 14, 2007, and set forth specific facts as to what time, effort, and skill he expended because of Plaintiffs' alleged fraudulent inducement.

New Orleans, Louisiana, on this  15th  day of May, 2007.

**STANWOOD R. DUVAL, JR.**
**UNITED STATES DISTRICT COURT JUDGE**